## REEVES *v.* SMITH.

4-3788

Opinion delivered January 21, 1935.

*W. F. Reeves,* for appellant.

*A. Y. Barr, W. T. Mills, W. T. Mills, Jr.,* and *Culbert L. Pearce,* for appellees.

BAKER, J. On September 5, 1934, there was filed with the clerk of Searcy County, Arkansas, two parts of a petition to initiate act No. 1 of Searcy County, the same being, "An Act to Fix the Salaries and Expenses of County Officials, and to Fix the Manner in which Compensations and Salaries shall be paid, to reduce the costs of County Government and for other purposes." A day or two later three other parts of the petition were filed. The petition took the usual or ordinary course as provided by law. Ballot title was certified in proper form and manner to the election commissioners and other requirements, as provided by Amendment No. 7 of the Constitution of the State and laws of the State, were complied with, in order that said petition might be voted upon at the general election held on November 6, 1934.

On October 5, 1934, W. F. Reeves, a citizen and taxpayer, filed this suit in the chancery court of Searcy County, to review the action of the county clerk in accepting and certifying the sufficiency of the said petition, and prayed for an injunction restraining the county board of election commissioners from placing the proposed act on the official ballot, and also to restrain Sam Blair, the county clerk, from certifying it to the election commissioners, and Buck Mays, as county judge, from carrying out its provisions.

Two contentions were made by the plaintiff and decided adversely to him, which become the basis of this appeal.

The first is that three of the separate parts of the petition, filed after parts one and two were filed, did not contain the enacting clause "Be it Enacted by the People of Searcy County, Arkansas." The three said parts were necessary to complete the petition, as the first two parts contained the names of only about eight per cent. of the voters of Searcy County. The number of electors signing all the parts were required in order that fifteen per cent. of the voters in that county might be counted upon the petition to initiate the proposed act.

The second objection was to the effect that the publication of the notice did not meet the requirements of Amendment No. 7 or of the law, and that, on account

thereof, the proposed act was not properly submitted and would therefore be invalid if adopted.

The proposed act was advertised in the Marshall Republican, in its issues of September 21 and September 28, and no other or further publication was had, and at the time of trial, in October, it was urged that insufficient time remained within which the legal notice could be given.

These two objections will be disposed of in the order stated.

Amendment No. 7 to the Constitution of the State is the Initiative and Referendum Amendment, and provides, among other things, that the petition for an act to be initiated by the people may be circulated and presented in parts, but each part of any petition shall have attached thereto the affidavit of the persons circulating the same, etc. This means, necessarily, that all the "parts" constitute but one petition for any proposed act filed with the county clerk, who shall pass upon the sufficiency of the petition.

The first two parts of the petition filed, according to the briefs, contained the enacting clause and are not subject to the objection urged as to the other three parts, which, it is stated, were filed a day or two later.

It is argued by the appellees that, when these parts of the petition shall have been filed, they constitute but one petition, praying for the same relief, and that their identity as parts, upon the proper filing was lost. They became one instrument or petition. If that theory is correct, then the one petition did have the enacting clause and complied with the constitutional requirements.

We agree with this contention. There are several reasons that impel us to reach this conclusion. The first is that Amendment No. 7 necessarily must be construed with some degree of liberality, in order that its purposes may be well effectuated. Strict construction might defeat the very purposes, in some instances, of the amendment.

Another reason, not less cogent, is that Amendment No. 7 permits the exercise of the power reserved to the people to control, to some extent at least, the policies of

the State, but more particularly of counties and municipalities, as distinguished from the exercise of similar power by the Legislature, and, since that residuum of power remains in the electors, their acts should not be thwarted by strict or technical construction. We are supported in this idea of more liberal construction by the following case: *Ferrell* v. *Keel,* 105 Ark. 380, 385, 151 S. W. 269. ''In construing this amendment, it is our duty to keep constantly in mind the purpose of its adoption and the object it sought to accomplish. That object and purpose was to increase the sense of responsibility that the lawmaking power should feel to the people by establishing a power to initiate proper, and to reject improper, legislation.''

In *Townsend* v. *McDonald,* 184 Ark. 273, 278, 42 S. W. (2d) 410, Chief Justice HART, discussing *State ex rel.* v. *Olcott,* 62 Ore. 277, 125 Pac. 303, said: ''This would make each sheet a separate petition and would be putting form above substance. No matter how many signers there are to a petition and how many sheets are used, they are pasted together and become a constituent part of the same petition. It is only necessary that a full and correct copy of the measure on which the referendum is asked be filed with the petition and attached thereto, in order that the petitioners may have the opportunity to read it and inform themselves as to the act to be referred before signing the petition, if they wish to do so.''

A realization that behavior and conduct in all affairs of life is never perfect, requires due allowances must be made for human frailties. Therefore only a substantial compliance is required. *Westbrook* v. *McDonald,* 184 Ark. 740, 746, 43 S. W. (2d) 356, 44 S. W. (2d) 331.

The parts of the petition were identical except the omission from some of them of the enacting clause. When combined into the one petition, it had the enacting clause and met the constitutional mandate. No prejudice resulted prior to this combination and filing of the parts thereof.

The second question arises out of the alleged fact of insufficient notice by publication, or advertisement, of the petition. It is stipulated that notice was given by two

publications in a newspaper of the county. No question is raised as to proof of publication, or to the effect that the paper was not one duly qualified for the publication of legal notices.

No statute in aid of the initiative or referendum, as to local matters, such as this, has been cited, except act No. 2 of the Acts of the Extraordinary Session of 1911, approved June 30, 1911.

Under the provisions of Amendment No. 7 the above act of the Legislature does not seem to be applicable in the matter of providing for the publication of local or county measures. We have been unable to find any other statute passed in aid of the I. & R. Quoting from Amendment No. 7, we find: "Publication—All measures submitted to a vote of the people by petition under the provisions of this section shall be published as is now, or hereafter may be, provided by law."

Section 15 of act 2 of the Acts of the Extraordinary Session of 1911, approved June 30, 1911, provides: "Not later than the first Monday of the third month before any regular general election at which any proposed law, part of an act or amendment to the Constitution or measure referred is to be submitted to the people, the Secretary of State shall cause to be published in one newspaper in each county (or in one newspaper in the county or city or town to be affected, if a local measure), for thirty days a true copy of the title and text of each measure to be submitted with the number and form in which the ballot title thereof will be printed on the official ballot."

Amendment No. 7, aforesaid, also provides: "In municipalities and counties the time for filing the initiative petition shall not be fixed at less than sixty days, nor more than ninety days, before the election, at which it is to be voted upon."

It will be observed from the foregoing quotations from act No. 2 of 1911 of the extraordinary session, and from Amendment No. 7, that the initiative petition could be properly filed sixty days before the election, and, if so, the foregoing provision of act 2 could not be complied with in the publication of the notice thereof on the first Monday of the third month before the election.

It must necessarily follow that the provisions for publication under the aforesaid act would be inapplicable to the advertisement and publication of notice of an act to be initiated in the matter of local or county government.

Amendment No. 7, however, is self-executing, and its provisions do not fail by reason of the fact that the act intended as an aid in prescribing the method or means of invoking the powers reserved in said amendment is not sufficient as to any particular condition that might arise. If there be no other act relating to publication, then recourse may be had to the general law of legal notices.

Crawford & Moses' Digest, as to legal notices and advertisements, provides: "Second 6809. When any legal advertisement or notice is required by law to be published, and no definite time is given for the same to run, it shall be construed to mean for one week; but when a definite time is specified, it shall be construed to mean once a week during the time so specified."

The legal notice published in this case is in conformity with this requirement of the law and is sufficient.

The decree of the chancery court is therefore affirmed.