DIXON *v.* HALL, SECRETARY OF STATE.

4-8024                                          198 S. W. 2d 1002

Opinion delivered September 30, 1946.

*Tilghman E. Dixon,* for petitioner.

*Guy E. Williams*, Attorney General, and *Ike Murry*, Assistant Attorney General, for respondent.

GRIFFIN SMITH, Chief Justice. A proposed initiated amendment to the Constitution has tentatively been designated No. 40. It bears the popular title, "Increasing Purposes and Millage for Municipal Improvement Bonds".[1]

On July 20th plaintiff filed an original action in this Court, asking that the Secretary of State be enjoined from accepting additional signatures. It is not disputed that when the initative petition was filed July 3 it contained but 3,664 names, while the requisite number was 21,685—a deficiency of 18,021. But, say proponents of the measure, Act 195 of 1943 commands the Secretary of State to receive additional names within a period of thirty days; and these, it is insisted, must be considered a part of the petition.

Amendment No. 7 to the Constitution, under which the proposed measure and the method of initiating it are sought to be justified, provides that if sufficiency of any petition is challenged and the Secretary of State shall hold it to be deficient, "he shall, without delay notify the sponsors . . . and permit at least thirty days from the date of such notification . . . for correction or amendment".

Attention is called to *Phillips* v. *Rothrock*, 194 Ark. 945, 110 S. W. 2d 26; *Beene* v. *Hutton*, 192 Ark. 848, 96 S. W. 2d 485; *Wait* v. *Hall, Secretary of State*, 196 Ark. 508, 118 S. W. 2d 585; *Hammett* v. *Hodges*, 104 Ark. 510, 149 S. W. 667; *Stewart* v. *Hulett*, 196 Ark. 403, 117 S. W. 2d 1067; *Walton* v. *McDonald*, 192 Ark. 1155, 97 S. W. 2d 81, and other decisions of our own. There are also citations to holdings in other jurisdictions.

The point at issue does not appear to have been directly determined by us.

---

[1] Two other measures, one known as "The Four Year Term Amendment," the other as "Community Property Law," were involved in the original pleadings, but inasmuch as sufficient signatures to complete the petitions were not secured within the extension of thirty days corresponding with the period here involved, it is not necessary to discuss them.

Any attempt by the General Assembly to add something to or take substance from the constitutional provision would be a nullity.

An elastic construction would be the result if we should say that the right to correct and amend means that proponents may file an obviously deficient petition—containing, for example, one name from each of fifteen counties—and upon notification by the Secretary of State that twenty thousand or more additional names were needed it would become mandatory that time be extended thirty days from the so-called "dead line".

Our view is that, under any rational construction, it was intended that a petition be filed within the time fixed by Amendment No. 7. To be a petition it must, *prima facie*, contain at the time of filing the required number of signatures. Correction and amendment go to form and error, rather than to complete failure.

The Secretary of State is directed to treat the proposed amendment as having failed for want of initiation. He is enjoined from certifying the measure to election commissioners.

MR. JUSTICE MCFADDIN dissents.

ED. F. MCFADDIN (dissenting). Constitutional Amendment No. 7 is generally called the "Initiative and Referendum Amendment." It was submitted at the general election in 1920, but not until the Special Supreme Court rendered the decision in *Brickhouse* v. *Hill*, 167 Ark. 513, 268 S. W. 865, on February 16, 1925, did the amendment become adopted officially.

The various paragraphs in the amendment are not numbered; so it is difficult to refer to any particular provision. But in the constitutional amendment as published in Pope's Digest, certain paragraphs begin with capitalized catchwords; and, by considering these as sections, it will be seen that the amendment has 22 sections which I list and number by the capitalized catchwords, as follows:

Section 1 Section 1
Section 2 Initiative

894

Section 3    Referendum
Section 4    Emergency
Section 5    Local for Municipalities and Counties
Section 6    Definition
Section 7    No veto
Section 8    Amendment and Repeal
Section 9    Election
Section 10   Majority
Section 11   Canvass and Declaration of Results
Section 12   Conflicting Measures
Section 13   Title
Section 14   Limitation
Section 15   Verification
Section 16   Sufficiency
Section 17   Court Decisions
Section 18   Amendment of Petition
Section 19   Unwarranted Restrictions Prohibited
Section 20   Publication
Section 21   Enacting Clause
Section 22   Self-executing

Through this method of identification, I proceed to refer to certain sections of the amendment.

The purpose of Amendment 7 was to facilitate the submission of measures to the people, either by initiative or by referendum. Section 16 of the amendment deals with the sufficiency of the petition. Sufficiency in what regard? The number of signers; because § 18 says, in part: "If the Secretary of State, . . . shall decide any petition to be insufficient, he shall without delay notify the sponsors of such petition, and permit at least thirty days from the date of such notification, in the instance of a state-wide petition, . . . for correction or amendment."

This language, to me, clearly means that the sponsors of the measure are to have thirty days (for a state measure such as is here involved) to secure additional signatures if the original petition does not contain sufficient signatures. That being true, the Secretary of State was acting within the letter and the spirit of the law when he

gave the sponsors of the measure here involved thirty days from July 20th in which to obtain additional signatures.

The majority opinion in this present case holds that the petition, when originally presented to the Secretary of State, must be *"PRIMA FACIE"* sufficient when filed, or there is no filing. My answer to that holding is, that the majority is writing the words *"PRIMA FACIE"* into the amendment, and thereby not only rewriting the amendment, but doing violence to its intent and its language. The words *"PRIMA FACIE"* are not in the amendment, and the adding of the words restricts and makes more difficult the right of the people to initiate laws.

It is very significant that this *"PRIMA FACIE"* requirement was not mentioned in the opinion in *Wait* v. *Hall,* 196 Ark. 508, 118 S. W. 2d 585. In that case this court recited that the original petition (for referendum) needed an additional 1,242 *valid* signatures to be sufficient; yet the court made no issue of the fact that the Secretary of State gave the sponsors of the petition the additional thirty days in which to obtain enough signatures to make the petition sufficient. Did this court mean to hold in that case that *invalid* names on a petition can make it *"PRIMA FACIE"* sufficient?

I think Act 195 of 1943 is valid as within the authority and scope of § 22 of this amendment No. 7, which says: ". . . laws may be enacted to facilitate its operation."

Section 5 of Act 195 of 1943 clearly permits—in fact, requires—the Secretary of State to do what he did in the case at bar. The majority, without saying so in words, has in effect held § 5 of Act 195 of 1943 to be void. Yet no authority is furnished for such holding.

Without prolonging this dissent, it is sufficient to say that I respectfully, but most seriously, dissent.